## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

---

Thomas A. Schweitzer,
    Plaintiff

    vs                        Case No. C-1-02-52
                                   (Hogan, M. J.)

Teamster Local 100,
    Defendant

---

### ORDER

---

       This matter is before the Court on defendant's summary judgment motion and exhibits (Docs. 41, 43), plaintiff's memorandum in opposition (Doc. 49), and defendant's reply. (Doc. XX). The parties have consented to the entry of final judgment by the undersigned United States Magistrate Judge. (Doc. 7). For the reasons set forth more fully below, defendant's motion will be granted.

### BACKGROUND

       Defendant Teamsters Local 100 is an unincorporated association operating as a labor union under the National Labor Relations Act, 29 U.S.C. § 151 et. seq., and the by-laws and constitution of its parent organization, the International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America. (Doc. 41, Ex. 1, By-Laws of Truck Drivers, Chauffeurs and Helpers Union Local 100). Local 100 is located in Evendale, Ohio, and represents employees in collective bargaining throughout the Greater Cincinnati area. The Local is governed by a set of by-laws which establish a seven-member Executive Board consisting of the President, Vice-President, Secretary-Treasurer, Recording Secretary, and three Trustees, all of whom are elected officers. (Doc. 41, Ex. 1, § 6). The Executive Board has the authority, with the approval of the Union, to establish a specific number of Business Agents,

who are also elected officials. In addition, the President may appoint non-elected officials, including organizers and business agents.

Plaintiff, Thomas Schweitzer, was born on March 21, 1940 and worked in the trucking industry for many years. (Deposition of Thomas Schweitzer, pp. 21-27). In 1996, while working for Walker Trucking, plaintiff suffered an injury while on the job. (Id., p. 28). Plaintiff did not return to his position as a driver, and Walker Trucking subsequently went out of business. (Id., p. 26). Plaintiff had been associated with Local 100 as an active member for over twenty years. In February 1998, plaintiff began volunteering as an assistant to Homer Mann, an employee of Local 100 who then served as the union's only paid organizer. In February 1999, plaintiff was appointed to a paid position as a non-elected organizer. While defendant asserts that plaintiff was initially hired as a part-time assistant to Homer Mann, plaintiff testified that he was hired as a full-time organizer. (Id., p. 53). In any event, plaintiff worked for Local 100 until March 26, 2001, when he was laid off from his employment.

Plaintiff alleges three causes of action against Local 100 stemming from his lay-off. First, plaintiff claims that he was terminated from his position because of his age in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 626, et, seq. Second, plaintiff claims that his unlawful discharge is also a violation of Ohio public policy prohibiting age discrimination. Third, plaintiff alleges that his discharge constitutes discriminatory interference with his right to benefits under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1140 et. seq.

Defendant moves the Court for summary judgment on all three of plaintiff's claims. Defendant contends that plaintiff was subject to lay-off due to a reduction in force that Local 100 was required to implement due to fiscal mismanagement and declining membership revenues. Defendant argues that plaintiff's lay off was based purely on economic necessity, not his age; therefore, plaintiff cannot maintain a cause of action for violations based on either the ADEA or Ohio public policy. Defendants further contend that the decision to lay-off plaintiff, which admittedly saved the costs of his continuing salary, car allowance, and pension and welfare benefits contributions, does not constitute an attempt to interfere with any ERISA benefits to which plaintiff had become entitled.

Plaintiff opposes defendant's motion, arguing that genuine issues of material fact exist with respect to each cause of action, thereby precluding summary judgment

2

in defendant's favor. Plaintiff asserts that defendant discharged him because of his age and subsequently replaced him with a younger, less qualified individual. In support of his argument, plaintiff asserts that he was replaced by Harry Gabbard; therefore, his lay off was not part of a reduction in force as asserted by Local 100. Plaintiff further contends that defendant's articulated reasons for his lay off are merely a pretext for unlawful discrimination, as demonstrated by the fact that he was the lowest paid organizer. Plaintiff claims that if defendant had really been interested in saving money, then Gabbard should have been laid off before him. In addition, plaintiff argues that pay rate increases for other Local 100 employees during the fiscal year that plaintiff was terminated demonstrate that the Union was not serious about either its financial problems or the alleged need to dramatically cut expenses. Lastly, plaintiff asserts that defendant's written response to the EEOC regarding plaintiff's age discrimination charges demonstrate that defendant terminated him, in part, to avoid paying his welfare and pension benefits.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted if the evidence submitted to the court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56. *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323.

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law. In response to a summary judgment motion properly supported by evidence, the non-moving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). Conclusory allegations, however, are not sufficient to defeat a properly supported summary judgment motion. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990). The non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-moving party relies. *Karnes v. Runyon*, 912 F. Supp. 280, 283 (S.D. Ohio 1995)(Spiegel, J.). "[A]fter a motion for summary judgment has been filed, thereby

3

testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial. *Anderson*, 477 U.S. at 249-50. In so doing, the trial court does not have a duty to search the entire record to establish that there is no material issue of fact. *Karnes*, 912 F. Supp. at 283. *See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988). The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 249-50.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a *prima facie* case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

The ADEA prohibits employers from discriminating "against any individual with respect to his or her compensation, terms, conditions, or privileges of employment because of such individual's age." 29 U.S.C. § 623(a)(1). Similarly, Ohio's anti-discrimination statute, which closely parallels the federal a discrimination statutes, including the ADEA, prohibits employment discrimination on the basis of age. *See* Ohio Rev. Code § 4112.02(A). Indeed, Ohio courts rely on cases interpreting the ADEA for guidance in deciding cases under the Ohio statute. *See Plumbers & Steamfitters Joint Apprentice Comm. v. Ohio Civil Rights Comm'n*, 66 Ohio St. 3d 192, 196, 421 N.E.2d 128, 131 (Ohio 1981). Because plaintiff's state law wrongful discharge claim is based on Ohio public policy as set forth in the state anti-discrimination statute, the viability of plaintiff's state law claim hinges on the viability of his ADEA claim, and therefore Counts One and Two of plaintiff's complaint may be analyzed together. *Whitt v. Lockheed Martin Utility Services*, 209 F. Supp.2d 787, 792 (S.D. Ohio 2002)(Holschuh, J.).

4

In order to maintain an age discrimination claim and withstand defendant's summary judgment motion, plaintiff must present either direct or indirect evidence from which the trier of fact may infer that a discriminatory motive was a motivating factor in defendant's decision to select plaintiff for lay off. *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348 (6th Cir. 1997). In the present case, plaintiff has not presented any direct evidence that defendant singled him out for lay off because of his age. Thus, if plaintiff's age discrimination claims are to survive summary judgment, plaintiff must offer circumstantial evidence of discriminatory animus sufficient to satisfy the now-familiar *McDonnell Douglas/Burdine* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, (1973); *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981).

In general, to establish a prima facie case of age discrimination, a plaintiff must show that (1) he was over age 40; (2) he was subject to an adverse employment action; (3) he was qualified for the position; and (4) he was replaced or treated less favorably than a substantially younger worker. *O'Conner v. Consolidated Coin Caterers Corp.*, 517 U.S. 308, 311-12 (1996); *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 371 (6th Cir. 1999). However, where a plaintiff's position was eliminated as part of a reduction-in-force (RIF), it is not enough to for a plaintiff to show that he was replaced by a substantially younger employee. Rather, a plaintiff terminated as part of a corporate reorganization carries a greater burden of supporting discrimination charges. *Ridenour v. Lawson Co.*, 791 F.2d 52, 57 (6th Cir. 1986). In the context of a RIF, the fourth element of the prima facie case requires plaintiff to present some "direct, circumstantial, or statistical evidence tending to indicate that the employer singed out the plaintiff for discharge for impermissible reasons." *Barnes v. GenCorp, Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990).

In the present case, it is undisputed that plaintiff was over age 40, that he was selected for lay-off, and that he was qualified for his position as an appointed organizer. Thus, plaintiff has presented sufficient evidence to satisfy the first, second, and third prongs of the *McDonnell Douglas* framework. However, the parties disagree as to the fourth prong. Plaintiff claims that he was replaced by a substantially younger employee and essentially argues that is discharge was not part of a bona fide RIF. Defendant, on the other hand, contends that plaintiff was not replaced, rather, his job duties were divided among two other employees whose job duties included labor organizing.

In order to determine whether plaintiff has satisfied the fourth prong of the

5

prima facie case, the Court must distinguish between those situations where an employee has been replaced and those in which his position was eliminated as part of a true RIF. *Barnes*, 896 F.2d at 1465. A true RIF occurs when business considerations cause an employer to eliminate one or more positions within the company. *Id.* As the *Barnes* Court noted:

> An employee is not eliminated as part of a work force reduction when he or she is replaced after his or her discharge. *However, a person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among other existing employees already performing related work.* A person is replaced only when another employee is hired or reassigned to perform the plaintiff's duties.

*Id.* (emphasis added).

Plaintiff does not dispute the business considerations which required defendant to eliminate positions within Local 100. Nevertheless, he claims that his particular position was never really eliminated; rather, he was replaced by Harry Gabbard. In support of his argument, plaintiff presents testimony from Art Green, a former business agent for Local 100, who avers that Gabbard moved into plaintiff's former office immediately after plaintiff was laid off, and began working as an organizer. (See Doc. 49, Affidavit of Art Green, attached). Defendant has offered evidence that plaintiff's job duties were divided between Homer Mann, plaintiff's supervisor and Local 100's most senior organizer, and Gabbard who had dual responsibilities as an organizer and business agent. The Green affidavit does not contradict defendant's evidence. The fact that Gabbard moved into plaintiff's office does not contradict defendant's admission that Gabbard assumed a portion of plaintiff's former duties. Nor does Green's testimony contradict defendant's evidence that Mann also undertook a portion of plaintiff's responsibilities following his lay off. Furthermore, plaintiff testified at deposition that his job responsibilities included that of maintenance man, responsible for raising and lowering the flag, setting up chairs and equipment for conferences, and even fixing the toilets.[1]  (Schweitzer Depo., pp 55-

---

[1]    Plaintiff appears to argue that he and Gabbard had identical job duties because both were listed as organizers in defendant's documents, plaintiff had business agent experience, and refutes defendant's assertion that he worked as a maintenance man. However, as noted above, plaintiff cannot create a genuine issue of fact by submitting an affidavit that contradicts his earlier sworn testimony. *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343,

61). There is no evidence that Gabbard undertook these responsibilities upon moving into plaintiff's office. Thus, even if Gabbard was reassigned to perform all of plaintiff's organizing duties, if he did assume all plaintiff's job duties he cannot be said to have replaced him. *Whitt*, 209 F. Supp.2d at 794-95. Contrary to plaintiff's assertions, there is no genuine issue of material fact with respect to whether plaintiff was replaced rather than subject to a work force reduction.

Thus, plaintiff establishes a prima facie discrimination case only if he has come forward with some direct, circumstantial, or statistical evidence demonstrating that defendant was motivated by age in selecting him for lay off. This plaintiff has failed to do. As noted above, plaintiff has not offered any direct evidence in support of his age discrimination claim. Nor has plaintiff presented any statistical evidence. As for circumstantial evidence, plaintiff argues that he was discharged so that defendant could retain a substantially younger worker, namely Gabbard. Assuming arguendo that plaintiff and Gabbard were similarly situated with respect to their job duties, plaintiff's argument is nevertheless unavailing. Plaintiff has not presented any evidence that Gabbard was not duly qualified for his position. Plaintiff simply argues that because Gabbard earned a higher salary, he should have been discharged if defendant was serious about cutting expenses. When a RIF occurs, the mere termination of a competent employee is not sufficient to establish a prima facie case of discrimination. "The ADEA was not intended to protect older employees from the often harsh economic realities of common business decisions and the hardships associated with corporate reorganizations, downsizings, plant closings and relocations." *Allen v. Diebold, Inc.*, 33 F.3d 674, 677 (6th Cir. 1994). Consequently, the ADEA bars discrimination based on age, but does not place an affirmative duty on employers to retain older workers whenever a reduction in staff is necessary. *Wilson v. Firestone Tire & Rubber*, 932 F.2d 50, 517 (6th Cir. 1991). Moreover, plaintiff's entire argument is belied by the fact that Gabbard was subsequently laid off a mere eight months later as part of the same work force reduction that caused the elimination of plaintiff's position. Having failed to establish a prima facie case in support of his age discrimination claim, plaintiff's ADEA claim cannot survive summary judgment. Plaintiff's state law claim for violation of Ohio public policy will likewise be dismissed.

---

1352 (6th Cir. 1991). At deposition, plaintiff clearly testified that he performed duties as a maintenance man.

Plaintiff's remaining claim alleges that defendant selected him for layoff to avoid paying his pension and welfare benefits, thereby interfering with his right to benefits under ERISA. To state a claim under ERISA § 510, a plaintiff must show that an employer had a specific intent to violate ERISA, through either direct or circumstantial evidence of such discriminatory intent. *Smith v. Ameritech*, 129 F.3d 857, 865 (6th Cir. 1997). In the absence of direct evidence, a plaintiff can demonstrate a prima facie case by showing: (1) prohibited employer conduct (2) taken for the purpose of interfering with (3) the attainment of any right to which the employee may become entitled. *Id.* In other words, plaintiff must come forward with evidence from which a reasonable jury could find that the defendant's desire to avoid pension liability was a determining factor in the plaintiff's discharge such that the alleged unlawful discharge will have a causal connection to the plaintiff's ability to receive an identifiable benefit. *Id.* The same *McDonnell Douglas/Burdine* burden shifting framework set forth to establish an age discrimination claim is applicable to an ERISA § 510 claim. *Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1043 (6th Cir. 1992). When plaintiff proves a prima facie case of interference , the employer must come forward with evidence of a legitimate, non-discriminatory reason for its challenged action. If the employer fails to do so, judgment is rendered for plaintiff. If the employer does state such a reason, plaintiff must demonstrate either that interference with pension benefits was a motivating factor in his discharge decision, or that defendant's reasons are unworthy of belief. *Id.*

Plaintiff asserts that the letter from attorney Julie Ford to Helen Glutz in response to plaintiff's EEOC discrimination charge constitutes direct evidence of defendant's intent to interfere with plaintiff's ERISA benefits. Plaintiff also relies on the affidavit of Art Green which recounts a conversation between Green and Local 100 secretary/treasurer Freddie Kells in support of his ERISA claim. According to Green, Kells told him that plaintiff was laid off because defendant did not want to pay plaintiff's health and welfare benefits. In addition, plaintiff argues that if defendant had genuinely sought to cut expenses it would have laid off higher paid employees before plaintiff, and declined to give raises to remaining staff the following year. Plaintiff asserts that this evidence also constitutes circumstantial evidence of an intent to interfere with his pension benefits and thus satisfies the *Burdine* burden shifting framework discussed above.

None of plaintiff's arguments are availing. Plaintiff does not make any claim that his lay off prevented him from vesting in any benefits already earned, or that such previously earned benefits would be forfeited as a consequence of his lay off. *Cf.*

8

*Humphreys v. Bellaire Corp.*, 966 F.2d 1037, 1043 (6th Cir. 1992). Plaintiff has merely demonstrated that his lay off resulted in the loss of opportunity to accrue additional benefits, a loss that would result from any discharge and which therefore has an incidental impact upon his retirement benefits. *Rush v. United Technologies, Otis Elevator Div.*, 930 F.2d 453, 457 (6th Cir. 1991). Indeed, defendant had no ability to interfere with plaintiff's vested pension benefits which are controlled and administered by Central States, a multi-employer pension plan separate and apart from defendant Local 100. And while defendant contributes to the Central States fund for each employee, defendant does not control the payment of benefits or the terms under which such payments become due to the employee. Therefore, defendant did not avoid pension liability by discharging plaintiff, in the sense that defendant would not have been required to make pension payments directly to plaintiff had Schweitzer remained employed. The evidence presented by plaintiff merely demonstrates that defendant took the amount of employee benefits contributions into account when considering whether lay offs were required for economic reasons. Defendant's payments to Central States were the same for all Local 100 employees, regardless of their position or salary level, thus the fact that defendant ceased making contributions on plaintiff's behalf following his lay off does not create an inference that defendant had a specific intent to interfere with his rights under ERISA.

Even if plaintiff were able to set forth a prima facie case under ERISA § 510, he cannot rebut defendant's legitimate reasons for his lay off which resulted in defendant's cessation of contributions to the Central States fund on his behalf. Plaintiff attempts to overcome defendant's asserted justification by relying on the same evidence he posits in support of his prima facie case. Again, this evidence is unavailing. As for plaintiff's reliance on the Green affidavit, Green's testimony as to a conversation with Kells regarding the reasons for plaintiff's lay off is clearly hearsay and will be disregarded by this Court. Likewise, plaintiff's assertion that defendant should have laid off higher paid employees to save money if indeed the union needed to undertake a RIF to cut expenses does not support his ERISA claim. As discussed above, there is no dispute that Local 100 was experiencing severe financial difficulty. Clearly the law does not require an employer to discharge employees based on salary alone when undertaking a RIF; otherwise, CEO's would be the first to go in every corporate downsizing. As for the raises allegedly received by other employees in the year following plaintiff's lay off, as defendant has demonstrated, those raises were tied to collective bargaining agreements which required percentage increases and which defendant did not have discretion to set aside.

Having failed to present evidence sufficient to support a prima facie case under ERISA § 510, plaintiff cannot maintain his third cause of action. Accordingly, defendant's summary judgment motion will be granted.

## IT IS THEREFORE ORDERED THAT:

Defendant's summary judgment motion be granted and this action be dismissed from the docket of this Court.

                                        S/ Timothy S. Hogan
January 20, 2004                        Timothy S. Hogan
J:\LWW\OrdersTSH\02-52schweitzermsj.wpd   United States Magistrate Judge